UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS RICARDO BROCATTO,<br><br>Petitioner,<br><br>v.<br><br>WARDEN TRIMBLE,<br><br>Respondent. | NO. CV 11-3547-AG (AGR)<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the other records on file herein, and the Report and Recommendation ("Report") of the United States Magistrate Judge. Further, the Court has engaged in a *de novo* review of those portions of the Report and Recommendation to which objections have been made. The Court accepts the findings and recommendation of the magistrate judge.

Petitioner initially filed a habeas petition *pro se* that contained five grounds. After briefing was completed, the magistrate judge appointed counsel for Petitioner. (Dkt. No. 39.) On June 8, 2015, Petitioner, represented by counsel, filed a First Amended Petition, which superseded the original petition and became the operative petition. (Dkt. No. 51); *Sechrest v. Ignacio*, 549 F.3d 789, 804 (9th

Cir. 2008) ("The filing of a new petition cancels out and waives any claims from the old petition."). The First Amended Petition contained four grounds. It omitted the fifth ground (ineffective assistance of counsel) from the original petition. After the magistrate judge issued a Report, Petitioner sought leave to represent himself. (Dkt. No. 72.) The request was granted. (Dkt. Nos. 73, 78.)

Petitioner, proceeding *pro se*, filed Objections to the Report ("Obj."). In his Objections, Petitioner raised a new ground based on prosecutorial misconduct and re-asserted a ground for ineffective assistance of counsel.

### A. Prosecutorial Misconduct

Petitioner's new ground based on prosecutorial misconduct is unexhausted because it was not raised before the California Supreme Court. (LD 9, 17.) An unexhausted ground cannot form the basis of federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). The claim may nevertheless be denied on the merits because it is "perfectly clear" it is without merit. *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

The Objections assert three categories of prosecutorial misconduct: (1) false statements to the jury; (2) threats to witnesses; and (3) failure to introduce evidence at trial favorable to the Petitioner.

<u>False Statements to the Jury</u>

Petitioner contends the prosecutor "opened the trial with a lie, stating that [victims] Richard and Edgar went to Mexico on vacation and told their grandmother that Petitioner had sexually abused them." (Obj. at 3.) Petitioner does not cite the record. The court has not found any such remark in the prosecutor's opening statement. (Reporter's Transcript ("RT") 931-36.)

Petitioner states he did not work two consecutive days at any place when Michael, another victim, was with him, and contends the prosecutor lied to the jury when she said "'it does not make any differen[ce]'" because Petitioner's

misconduct could have happened "'at this other place.'"[1] (Obj. at 4.) Petitioner does not cite the record, and the court has not found an argument by the prosecutor about job sites. Rather, the prosecutor accurately told the jury that Michael testified something happened on both days but he could not remember which incident happened first. The prosecutor argued, "I'm saying not the dates, but it's what happened that matters." (RT 2743.) A prosecutor may properly argue reasonable inferences from the evidence. *See United States v. Young*, 470 U.S. 1, 8 n.5 (1985).

Petitioner contends the prosecutor lied to the jury when she said Petitioner had touched Michael "skin to skin." (Obj. at 6.) Petitioner does not cite the record, and the court has not located any such statement to the jury. In her opening statement, the prosecutor stated Petitioner was clothed. (RT 932.) In closing, the prosecutor stated that legally it did not matter whether the touching occurred through clothing as opposed to bare skin. (RT 2741.) The prosecutor did not make a representation that the touching was skin to skin. (RT 2744.)

Petitioner contends the prosecutor lied when she said she had dropped charges based on another victim, Marisol, due to the statute of limitations. (Obj. at 5.) Petitioner does not cite the record. The prosecutor acknowledged to the jury that Marisol was not the subject of any of the charges. (RT 2713.) However, the court has not located any statement by the prosecutor to the jury that explains why there were no charges based on Marisol.

Petitioner contends the prosecutor lied about Marisol's foster (and later

---

[1] Michael was 11 years old when the two incidents occurred. (RT 944.) He testified that he and Petitioner went to the same job site both days, and one incident occurred on a day they were painting. (RT 975.) Police service representative Segoviano testified that the two dates of the incidents were July 19 and 20, 2006. (RT 1225.) The defense called Mr. Villatorro, who worked on Petitioner's truck at a location on Hoover Street and saw Petitioner painting with a young boy. (RT 1904.) The defense also called Mr. Dokovic, who had Petitioner do maintenance work at his restaurant one day. Petitioner came with a young boy. (RT 2410-11.)

3

adoptive) parents filing a police report against Petitioner. (Obj. at 5.) In closing argument, the prosecutor stated that Marisol's foster parent, Mr. Gomez, took her to a police station. (RT 2715.) Gomez testified that Marisol was their foster child. When she was about six years old, after living with Petitioner and his wife, Marisol said she used to be naked in bed with Petitioner. Marisol was crying and kept her head down. (RT 1318-19.) Gomez and his wife reported the incident to the foster agency. They were told to take Marisol to the police department to report the incident. Gomez's wife took Marisol to the police. (RT 1319.) The discrepancy about which foster parent took Marisol to the police is immaterial.

      Petitioner contends the prosecutor lied to the jury when she argued that Petitioner has stubby fingers. (Obj. at 6.) Jexiri, another victim, testified she told police Petitioner is missing part of a finger on one hand. (RT 1243.) Detective Anderson testified that Jexiri and another victim, Edgar, said Petitioner was missing a finger on one hand. (RT 2186-87.) During closing argument, defense counsel had Petitioner show his hands to the jury. (RT 2766.) The prosecutor told the jury they can look at Petitioner's fingers and "they're sort of stubby. And if you're a child, it may have looked like, you know, he was missing a portion of a finger." (RT 2780.) The prosecutor argued that the testimony was immaterial because there was no dispute as to who Edgar and Jexiri were accusing. (*Id.*) The jury had all of this evidence before it. Thus, whether or not Petitioner's fingers can be characterized as stubby, any error was harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (error is harmless unless it had substantial and injurious effect or influence in determining jury verdict). The court instructed the jury that nothing the attorneys say, including opening statement and closing argument, is evidence. (RT 2459.) A jury is presumed to follow jury instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

      Petitioner argues the prosecutor lied to the court when she said she discovered mid-trial a report about two other victims in the file of Ms. Hollowell,

4

Marisol's social worker. This alleged statement was not made to the jury. According to Petitioner, the victims' mother, Ms. Zepeda, would testify that two detectives pressured her to testify against Petitioner two or three weeks before trial. (Obj. at 5.) Even assuming Zepeda would so testify, the fact that Petitioner had previously been accused of molestation by two other victims was known before trial by both the prosecutor and defense counsel.[2] (Report at 20.) The prosecutor had a name and told the court she had personally contacted the victim's mother, who denied having any knowledge of it. (*Id.*) Accordingly, the fact that Ms. Zepeda was contacted by the prosecutor or detectives prior to trial is consistent with the prosecutor's representations.

Petitioner argues the prosecutor fabricated the evidence that Petitioner was accused of molestation by these two other victims because the reporting party, Patty, was 20 years old when the incident was reported in 1990. (Obj. at 17.) Petitioner has not shown any fabrication. Petitioner does not cite any evidence for his allegation about Patty's age. Although the prosecutor and defense counsel had the 1990 report, the report is not in the record. (RT 2401-02.) Patty was Petitioner's sister's daughter and reported in 1990 that Petitioner had touched her and her younger sister. (*Id.*) One of the nieces was 26 years old at the time of trial and, therefore, would have been 8 years old in 1990. (*Id.*) Both nieces appeared and were prepared to testify at trial. (RT 2402.)

Threats to Witnesses

A criminal defendant "has the right to present his own witnesses to establish a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). In *Webb v. Texas*, the sole defense witness had a criminal record and was then serving a sentence. The Supreme Court held that a defendant was deprived of due

---

[2] For this reason, Petitioner has not shown a *Brady* violation based on failure to disclose this accusation. (Obj. at 24; Report at 20 (discussing evidence that defense counsel was aware of this allegation).)

5

process when the sole defense witness refused to testify after the trial judge threatened the witness that if he lied, "the Court will personally see that your case goes to the grand jury and you will be indicted for perjury"; "the liklihood [*sic*] is that you would get convicted of perjury and that it would be stacked onto what you have already got"; "[i]t will also be held against you in the penitentiary when you're up for parole"; and "the Court wants you to thoroughly understand the chances you are taking by getting on that witness stand under oath." 409 U.S. 95, 96 (1972). The Supreme Court concluded that "the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process." *Id.* at 98. The *Webb* decision has not yet been applied to a prosecutor or to a witness who continued to testify. *See United States v. Juan*, 704 F.3d 1137, 1141-42 (9th Cir. 2013).

      Petitioner argues that the prosecutor threatened to prosecute Margarito Garcia for illegally crossing the border from Mexico in order to testify at Petitioner's trial and that Margarito did not testify about "what Edgar told him." (Obj. at 9-10.) The record does not support Petitioner's contention. First, Margarito did testify about what Edgar told him. On direct examination, Margarito testified that he asked all three of his nephews (Edgar, Richard and Manuel) whether they had been molested by Petitioner and all three said it was a lie. (RT 2416.) Second, Margarito was not present at sidebar when the prosecutor represented to the court that Abigail's ex-husband said Abigail had paid $4000 to have Margarito cross the border illegally to testify, and argued that a $4000 payment was relevant to bias. (RT 2421-22.) The court then had Margarito brought to sidebar. (RT 2423.) Margarito said he paid for his own trip, not Abigail. (RT 2424.) The court appointed a lawyer for Margarito. (RT 2437.)

Margarito testified before the jury that he paid for his own trip, not Abigail.[3] (RT 2438.) Accordingly, there is no showing that Margarito failed to give testimony after being threatened with prosecution.

Petitioner argues that his wife Abigail was threatened with charges for calling a prosecution witness, Maria. (Obj. at 11.) Petitioner does not cite the record, and the court has not located anything in the record about a threat to Abigail. Petitioner cites a witness statement dated October 9, 2007 (several months before trial), from Abigail's sister Carmen. Apparently, Carmen came to visit from Mexico. While she stayed with Petitioner and Abigail, Carmen used their phone to call her sister Maria and Jexiri, Maria's daughter and a victim. Carmen did so without knowing what was going on until Abigail told her not to call with Abigail's phone. (Exh. D at 2 to Obj.)

Petitioner argues that Zepeda was threatened with losing her retirement if she did not cooperate with the state. (Obj. at 11-12.) Petitioner does not cite the record, and the court has not located anything in the record about a threat to Zepeda, who was not a witness at trial. Zepeda maintained that she knew nothing about a molestation of her daughters. (RT 2402.) There is no showing that any threat deprived Petitioner of this witness.

Petitioner contends that Richard was improperly threatened by the prosecutor. Detective Anderson testified that he told Richard before the preliminary hearing that if he did not tell the truth, he could be charged with perjury. (RT 2179.) Richard testified that Detective Anderson said before the preliminary hearing that if Richard changed his story, he could be charged and go to jail. (RT 1613.) Richard testified he was not intimidated. In fact, Richard recanted his accusations at the preliminary hearing and at trial. (RT 1616; *see*

---

[3] Petitioner also argues Abigail was threatened with prosecution for arranging to have Margarito brought illegally across the border, but there is no evidence in the record of such a threat. (Obj. at 11.)

7

CT 66-98.)  A warning about the consequences of perjury is not *per se* improper. *Juan*, 704 F.3d at 1142; *Williams v. Woodford*, 384 F.3d 567, 603 (9th Cir. 2004) ("merely warning a witness of the consequences of perjury does not unduly pressure the witness's choice to testify or violate the defendant's right to due process").  Detective Anderson's statements did not deprive Petitioner of Richard's testimony as a recanting witness.

However, the prosecutor's question to Richard at trial stepped over the line: "Do you understand, Richard, that right now you're incriminating yourself and you're saying, 'I made a false police report, Ms. Carrillo'?  Should I charge you with making a false police report?"  (RT 1814.)  The court sustained defense counsel's objection.  (*Id.*)  As discussed above, the prosecutor's threat did not deprive Petitioner of Richard's testimony as a recanting witness.

Finally, Petitioner argues that Edgar was threatened that if he cooperated, the prosecution would help him with his legal issues, but if he did not cooperate, he would go to jail for a long time.[4]  (Obj. at 12.)  Petitioner does not cite the record, and the court has not located any such threat.[5]

Evidence Favorable to Petitioner at Trial

Petitioner contends that the prosecutor failed to disclose to the jury evidence that was favorable to him:  (a) he filed a police report on Marisol's behalf against Marisol's stepfather; (b) he and his wife Abigail had been investigated previously in response to allegations of child molestation made by Abigail's family and no charges were ever brought; and (c) Edgar had to be

---

[4] Petitioner also contends that the prosecution failed to disclose promises made to Edgar in exchange for his accusations against Petitioner, and failed to disclose that they offered to help Edgar with his legal issues if he cooperated. (Obj. at 7-8.)  These allegations are discussed below in connection with Petitioner's *Brady* claim.

[5] Edgar denied that Detective Anderson threatened him with charges or arrest if he changed his story.  (RT 1540.)

8

arrested in order to testify at the preliminary hearing.[6] (Obj. at 7-8.) Petitioner cites no clearly established federal law for the proposition that the prosecution has an obligation to introduce evidence favorable to him at trial. Defense counsel was aware of this information. (Exh. B to Obj.; CT 5-6, 274-75); *see also Cunningham v. Wong*, 704 F.3d 1143, 1154 (9th Cir. 2013) (prosecutors do not commit *Brady* violation in failing to disclose information known to the defense); *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (prosecutor does not have burden of attacking credibility of prosecution witnesses).

### B. Ineffective Assistance of Counsel

Petitioner's ground based on ineffective assistance of counsel is unexhausted because it was not raised before the California Supreme Court. (LD 9, 17.) Federal habeas relief is therefore unavailable. 28 U.S.C. § 2254(b)(1)(A). The claim may also be denied on the merits because it is "perfectly clear" it is without merit. *Cassett*, 406 F.3d at 624.

To succeed on a claim of ineffective assistance of counsel, Petitioner must demonstrate that his attorney's performance was deficient and that the deficiency prejudiced the defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner bears the burden of establishing both components. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

"'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be

---

[6] At the preliminary hearing, Edgar apparently tried to leave the courtroom before testifying and was stopped downstairs. The court told Edgar he would be kept in custody until he testified as a material witness. (Clerk's Transcript ("CT") at 5-6.)

9

considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). *Strickland* "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 562 U.S. at 110.

To establish prejudice, a petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' The likelihood of a different result must be substantial, not just conceivable.'" *Richter*, 562 U.S. at 112.

A court need not address both deficiency and prejudice if a petitioner makes an insufficient showing on one. *Strickland*, 466 U.S. at 697. "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

Petitioner argues counsel was deficient for failing to object to a witness making false statements. (Obj. at 26.) However, falsity is a basis for cross examination, not objection.

Petitioner argues in conclusory fashion that counsel failed to subject the prosecution's case to meaningful adversarial testing, failed to prove that the prosecution's case was a sham and withheld evidence in his possession. (*Id.* at 26-27.) "Conclusory allegations which are not supported by a statement of

10

specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

Petitioner argues that counsel failed to object to the prosecutor's threats. (Obj. at 26.) As discussed above, defense counsel objected to the prosecutor's threat to Richard (RT 1814) and objected to the prosecutor's inquiry into how Margarito came to the United States to testify (RT 2421). Petitioner does not identify any threats to which counsel should have objected and did not.

Petitioner argues his counsel was deficient in making false statements to the court about his reasons for a continuance of the trial date, and failed to prepare for trial. (Obj. at 27.) In connection with Ground Three (denial of continuance of trial date), the Report concluded the state court did not unreasonably determine that "defense counsel falsely stated he was either in, or about to commence, another trial on the same date" and that defense counsel "had not shown diligence." (Report at 15.) However, Petitioner has not shown prejudice. The Report concluded that counsel amassed witnesses to support a defense that the victims and their parents in Abigail's family had motives to fabricate accusations against Petitioner and retained an expert to opine that Petitioner did not have the characteristics of a person who molests children. (*Id.* at 17-20.) Petitioner does not identify what evidence counsel should have located but did not.

Finally, Petitioner challenges a strategic decision defense counsel made that is described in the Report in connection with Ground Three. (Report at 20-21.) Before trial, the prosecutor and defense counsel were aware that when Petitioner and Abigail tried to adopt Marisol, a check of Petitioner's fingerprints revealed that he had previously been accused of molestation by his nieces, the daughter of Petitioner's sister. (*Id.* at 20.) The prosecutor could not find the report, and Petitioner's sister denied any knowledge. (*Id.*) In the middle of trial, Marisol's social worker testified and found the report in her file. Report in hand,

11

the prosecutor subpoenaed the nieces to appear at trial.  (*Id.*)  Notwithstanding the mother's statement to the prosecutor, the report indicated that the mother requested that the incidents not be reported to police because Petitioner was a family member and that the mother agreed to family counseling.  (*Id.* at 20-21.)

The court ruled that the prosecution could use the nieces' information to impeach Petitioner's expert witness and Petitioner's remaining witnesses.[7]  (*Id.* at 21.)  Defense counsel told the court that the expert, upon being advised of the nieces' allegations, "doesn't know how to answer it."[8]  (*Id.*)  Defense counsel was concerned that if Petitioner, Abigail or the character witnesses testified, they would open the door to the nieces' testimony in rebuttal.  The court responded, "I think so."  (*Id.*)

Defense counsel's decision not to risk introduction of the nieces' testimony was reasonable.  The defense had already presented evidence that the victims and their parents had motives to fabricate accusations against Petitioner through cross examination and defense witnesses.  However, the nieces were the daughters of Petitioner's sister.  The same motives could not be ascribed to them.  The nieces' testimony would therefore undermine the heart of the defense.  Petitioner does not present any persuasive arguments as to why his counsel's decision was deficient.  Petitioner argues generally that counsel should have done more investigation, but Petitioner does not explain what evidence such an investigation would have unearthed.  Petitioner argues that counsel merely wanted to finish Petitioner's trial so that he could go on to the next trial.  (Obj. at 27.)  Defense counsel stated he had "six witnesses" who were "potentially impacted by this issue," one of whom was his expert, who was sitting in the hall

---

[7] The California Court of Appeal held that the trial court did not err in its ruling.  (LD 8 at 11.)

[8] Although the expert report was not in the state court record, Petitioner attaches the report to his objections.  (Exh. G to Obj.)

12

waiting to take the stand that morning.  (RT 2404-05.)  The fair import of defense counsel's statements is that counsel was prepared to put the witnesses on the stand depending upon the court's ruling.  (RT 2405-08.)

### C. *Brady* Violation (Ground Four)

Petitioner adds additional *Brady*[9] claims that were not exhausted and therefore cannot form the basis for habeas relief.  28 U.S.C. § 2254(b)(1)(A).  The new claims are without merit.

Petitioner argues that the prosecution failed to disclose a police report filed by Petitioner on Marisol's behalf.  (Obj. at 23.)  Defense counsel had that report.  (Exh. B to Obj.; RT 2407.)

Petitioner argues that the prosecution withheld that Edgar was "paid" for his accusations with a "deal on his personal criminal cases" and with "$2,000 . . . days before trial."  According to Petitioner, the deal included a 45-day sentence for transporting drugs.  (Obj. at 23-24.)  Petitioner does not cite any evidence in the record to support the existence of payment or deals on Edgar's criminal cases in exchange for his testimony, and the court has not located any such reference.

Finally, Petitioner argues that the prosecution failed to disclose why the Los Angeles Police Department was involved in the investigation instead of the Sheriff's Department.  (Obj. at 24.)  Detective Anderson testified that he is a detective with the Los Angeles County Sheriff's Department.  (RT 1831.)  Moreover, this fact is not material.

Petitioner's remaining objections are without merit.

---

[9] *Brady v. Maryland*, 373 U.S. 83 (1963).

13

IT THEREFORE IS ORDERED that judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: March 31, 2016

_____
ANDREW J. GUILFORD
United States District Judge